Michael E. Hansen [SBN 191737]
711 Ninth Street, Suite 100
Sacramento, CA 95814
916.438.7711
FAX 916.864.1359
Email: mhansen@criminal-defenses.com

Attorney for Defendant
TERESA MARTY

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA,

Plaintiff,

v.

TERESA MARTY,

Defendant.

No. 2:13-CR-00217-KJM

**DEFENDANT TERESA MARTY'S SENTENCING MEMORANDUM**

Date: April 26, 2017
Time: 9:00 a.m.
Judge: Hon. Kimberly J. Mueller

## I. INTRODUCTION

On February 15, 2016, defendant Teresa Marty will appear before the Court for sentencing for one count of Conspiracy to Commit False Claims Against the United States (18 U.S.C. § 286), and one count of Conspiracy to Defraud the United States (18 U.S.C. § 371). For the reasons discussed herein, and any others that may arise during her sentencing hearing, Ms. Marty, through her undersigned counsel, requests a downward variance and/or departure for a sentence of not more than 36 months imprisonment.

Undersigned counsel strongly urges leniency for Ms. Marty, a 57-year-old mother and grandmother who outside of this offense and a DUI has never been in trouble with the law. Her father was a bee farmer, who lost his business and home to the IRS because of significant tax problems. Ms. Marty was taught from her father from an early age to distrust and hate the IRS. In her early adult life she gave birth to a deaf child, whom she had to raise as a single mother for

many years. Later, ironically, she became a tax preparer specialist. Business was going good, and she never had any intention of defrauding the government. But she was later manipulated and brainwashed by the Sovereign Citizen movement—a group of tax protesters who feel they are not subject to any government statutes or proceedings—to join their movement. The leaders of the movement were able to tap into her underlying anger and hatred toward the IRS and government, feelings she harbored since she was a little girl, to convince her to join. They also played on the sadness she experienced helping people with their taxes over the years, a sadness she felt because so many people were losing their business, homes, and all of their savings to the IRS at time when the economy had tanked.

She knows now how wrong she was. She feels utterly guilty for what she did. The people she thought she helped are now in peril, having lost everything once the IRS caught up with the fraudulent acts. She is no longer part of the sovereign citizen movement, and rejects their ideology. She believes everyone should pay their fair share of taxes, and understands the value of people paying. In particular, she had a realization since this offense occurred, about the value of taxes and how they help people, including people like her: she would never have been able to afford all the medical bills of her deaf son throughout his life if it weren't for MediCal.

She has rehabilitated, both in ideology and alcoholism, and has been alcohol free for nearly two years. She suffers from severe depression and anxiety and other medical issues in her older age, some of it in part due to the stress of this case. She would not do well in prison, and does not pose a threat to repeat her offenses. Please consider leniency.

## II. PSR EXPLANATIONS

Undersigned counsel did not submit timely objections to the PSR in this case. Undersigned respectfully requests consideration, however, of the following PSR issues that were recently discovered.

At paragraph 10 and 29, the PSR states that Ms. Marty recruited clients to defraud the government. In fact, clients found her through word of mouth and through the sovereign citizens network and wanted to hire her to do their taxes. They came to her; she did not advertise her services. Once they called, she did tell others that her methods were legitimate.

Also in paragraph 10, it states that she signed form 1096. Ms. Marty asserts she never signed any 1096 forms.

## III. SENTENCING CONSIDERATIONS

Pursuant to *United States v. Booker* and *United States v. Fanfan*, the Guideline calculations presented in this report are advisory only. The Court should consider factors set forth in 18 U.S.C. section 3553(a) when determining a sentence to be imposed that is sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. section 3553(a)(2). Factors include nature and circumstances of the offense, history and characteristics of the defendants, age, medical condition, post-offense rehabilitation, and policy considerations addressing the need and extent of punishment.[1] Ms. Marty is a good candidate for a variance and/or departure under these factors.

### A. History and Characteristics

Teresa Marty grew up on a bee farm. Her father made a living as a beekeeper. When Ms. Marty was 13 or 14 years old, the IRS audited her father. He dad decided not to show up to the audit, which led to the downfall of the family bee business. He lost his business, and then lost the home because of his tax problems. The IRS threatened to throw him in jail numerous times. Her father decided then to bring Ms. Marty along with him to his meetings with the IRS because he figured they wouldn't throw him in jail if he were with his teenaged daughter. They never did put him in jail because her family up and left and came to the west coast. But she remembers those times, and how cruel and mean the IRS agents appeared to be in her mind toward her father. Those memories stuck with her all her life.

As a young adult she gave birth to her only child Shaun, who was born deaf. She raised Shaun as a single mother for many years until she met her current husband Michael Marty. It

---

[1] *See Gall v. U.S.*, 552 U.S. 38, 47 (2007); § 5K2.0(a)(1); *Rita v. U.S.*, 127 S.Ct. 2456, 2473 (2007) (Stevens, J. and Ginsburg, J., concurring) ("The Commission has not developed any standards or recommendations that affect sentencing ranges for many individual characteristics. Matters such as age, education, mental or emotional condition, medical condition (including drug or alcohol addiction), employment history, lack of guidance as a youth, family ties, or military, civil, charitable, or public service are not ordinarily considered under the Guidelines.) *See* USSG. Manual §§ 5H1.1-6, 11, and 12 (Nov. 2006). These are, however, matters that § 3553(a) authorizes the sentencing judge to consider. *See, e.g.*, 18 U.S.C. § 3553(a)(1).")

was a struggle raising a deaf child, but she did her best. Shaun is resilient, however. Technological advances have allowed him to hear minimally with ear devices. He also learned to lip read, and to communicate effectively from years of training.

In her old age she enjoys raising chickens, going to chicken shows, scrapbooking, rubber stamping, card making, gardening, farming, spending time with her family, husband, son, and grandson, and making homemade cheese, butter and bacon. Since this offense she completed her bachelor's degree in paralegal studies, becoming the first in her family to complete college. She also started her own online business called Global Garden Seeds, in which she sells heirloom seeds. These seeds are highly sought after because the fruits and vegetables grown from these seeds produce viable seeds for replanting. This is in contrast to many of the seeds on the market today, which are genetically modified not to produce viable seeds (also called "hybrid seeds").

Ms. Marty has many great qualities. Aside from a DUI, Ms. Marty had never been in trouble with the law before this offense. She's raised a family, worked hard all her life, and treated others with great respect and empathy. In fact, as will be explained in more detail below, it is because she empathized so deeply with the plight of her struggling tax clients that she got so caught up in this conspiracy. One of her great qualities is that she cares so much for people. She witnessed the despair and sorrow of her client's losing everything because of tax problems. When she learned of a way to help them she did. To a fault, she is a caring person who sought to do good.

**B. Nature and Circumstances of the Offense**

Ms. Marty was manipulated and brainwashed by the sovereign citizens movement. From Wikipedia:

> Self-described sovereign citizens take the position that they are answerable only to their particular interpretation of the common law and are not subject to any government statutes or proceedings. They do not recognize United States currency, and maintain that they are "free of any legal constraints." They especially reject most forms of taxation as illegitimate. Participants in the movement argue this concept in opposition to "federal citizens," who, they say, have unknowingly forfeited their rights by

> accepting some aspect of federal law. The doctrines of the movement are similar to those of the freemen on the land movement more commonly found in Britain and Canada.

Ms. Marty was invited by a friend of hers to attend a seminar on taxes. She did not know at the time it was as sovereign citizens movement seminar. She was told by her friend that it was a seminar on tax filing, and that the information might help her with a particular client Ms. Marty had at the time. This client was having major tax problems at the time, so when she heard about the seminar she became very interested.

At that time, her business was profitable. She was a licensed tax preparer making solid wages. She had normal amount of debts, and nothing to complain about. She was good at what she did, and felt successful.

The seminar she attended, however, really resonated with her. It was led by a man named James Timothy Turner, the president of the Republic for the united States of America (RuSA), once the largest sovereign group in America.[2] When the leaders of the sovereign movement found out that Ms. Marty was a licensed tax preparer, they heavily courted her to join their ranks. They manipulated her, and played on her deepest fears, emotions, naiveté, and her kind and empathetic heart. She remembered the anger she felt as a child when her father lost everything to the IRS, how mean she thought the IRS agents were to her family, and how her family struggled afterwards. She reflected on the strong negative sentiments her father had about the IRS and government, that the IRS and government were not to be trusted, and things of that nature. She connected the preachings of the sovereign movement to the situation many of her clients were in. Many of her clients in recent years struggled with debt and taxes due to the recession. She saw time and time again how lives were ruined when the IRS came in and seized everything.

---

[2] *See* https://www.splcenter.org/fighting-hate/extremist-files/individual/james-timothy-turner ("Ever the charismatic huckster, Turner appointed himself "president" of the nation and convinced people from all walks of life to reject their U.S. citizenship in exchange for citizenship in RuSA. Within three years, however, he was serving an 18-year prison sentence for his sovereign activities. On March 22, 2013, a federal jury convicted him on 10 tax fraud charges stemming from seminars he held between 2007 and 2009 that purported to teach people how to tap into "secret" government accounts to pay their tax bills."

The leaders convinced her that their methods for doing taxes were legitimate. One of the methods they taught her, which is the basis for her conviction in this case, was to mark debts as withheld income by the government. Since the "income" was withheld, it needed to be paid back to the individual as a tax return. The leaders showed her returns paid by the IRS using this method. Ms. Marty researched the method, and thought long and hard about it. She decided to submit a tax document using the method and then follow-up with an IRS agent to ensure it was done properly. When she spoke with the IRS agent who reviewed her work, they ensured her that everything was proper. She also knew that the method required submission of a particular tax document (1040x), which she knew was required to be reviewed by an actual IRS agent. Because so many of these tax documents were reviewed by humans and at the same time were being approved, she thought, wrongly, that the method had to be legitimate.

For these reasons, she thought what she was doing had legitimacy. She then set out to use this method to help her clients in need. Her intentions were to help people that were struggling with their taxes. In her heart she thought she was doing a good thing. She did not think she would face years in prison for using this tax method.

She also used the method on her own returns one year, and received a substantial return. She never used the method on herself again, however. Her tax business also grew as a result of people using her services for the tax method she employed.

After she was caught, the leaders showed her how to file liens against the IRS agents. She followed their instructions at a time when everything was crashing down on her. She began drinking heavily, and becoming severely depressed. This was in a bad time in her life. She was angry, bitter, distraught over losing everything. She thought it was all unfair that she was being punished for what she thought was more about the IRS messing up by approving the tax returns. That is when she decided to obstruct justice by filing liens against IRS agents.

She then began to learn about some of the awful things that were happening to the clients she prepared taxes for using the method. People were losing everything and going to jail. Her clients were in a state of despair over this, and Ms. Marty knew it was all her fault.

She feels guilty every single day for what she did. She ruined lives, and caused a lot of pain and hurt. She is no longer part of the sovereign citizens movement and disavows their ideology. She knows what she did was wrong, and why people need to pay their taxes. She has had a lot of time to reflect, and during that time realized that tax dollars saved her son. They qualified for MediCal, which in turn paid for the many treatments and surgeries he's had throughout his life. She understands now how the taxes people pay often serve to save lives.

**C. Age, Medical Condition, Post Offense Rehabilitation[3]**

Ms. Marty is now 57 years old. She is a grandmother, mother, and wife. She has medical and psychiatric ailments that requirement a host of medications, including the following:

- Levothyroxine: used to treat an underactive thyroid (hypothyroidism)
- Creon: for enzyme deficiency
- Montelukast & Albuterol-Ipratopium Bromide: for asthma
- Abilify: for depression
- Escitalopram: for severe depression and anxiety
- Estradiol & Progesterone: for menopause
- Zolpidem & Trazadone: for insomnia
- Cetirizine & EpiPen: for severe allergies
- Cyanocobalamin: to maintain healthy metabolism, blood cells, and nerves
- Alprazolam: anxiety and panic disorders.
- Tramadol: to treat pain from scoliosis
- Polyethylene glycol: for IBS

[3] *U.S. v. Spigner*, 416 F.3d 708 (8th Cir. 2005) (post-*Booker* remand granted for defendant convicted of selling more than 50 grams of crack, even though defense agreed not to ask for downward departures based on health, § 5H1.4, because district court can still impose a sentence below the now advisory guidelines, which permit broader considerations of sentencing implications, including the § 3553(a)(d) goal of providing medical care in the most effective manner); *U.S. v. Alemenas*, 553 F.3d 27 (1 Cir. 2009) (after granting departure from career offender guideline for defendant charged with crack distribution, district court also varied 43 months below the reduced range citing defendant's chronic neck pain and his mental and emotional condition).

Ms. Marty has also rehabilitated from alcohol abuse. She was an everyday user, to the point of passing out. She completed the WellSpace 90-day inpatient program in 2015 and has been clean ever since. She continues regular sessions with her counselor. He post-offense rehabilitation is significant both as a factor that warrants a departure, and because it shows her ability to change and her ability to follow rules and laws.[4]

**D. Sentencing Policies**

The need for a lengthy prison sentence is unnecessary with a defendant like Ms. Marty. She is 57 years old, has many medical and mental ailments, and is not a threat to ever commit another crime. She has no history of breaking the law, and has not committed any crime since this event occurred. Aside from one DUI and this offense, her overall character has been of one who obeys the law and cares for others. In the context of evaluating her entire life, Ms. Marty has otherwise been upstanding.[5]

Moreover, the length of time it took the government to bring charges against Ms. Marty is in and of itself a punishment and sentence. She was raided in 2009. Yet the government

---

[4] Post-offense rehabilitation is recognized as an appropriate mitigating circumstance under §3553. *See U.S. v. Green*, 152 F.3d 1202 (9th Cir. 1998) (post- offense and post-sentencing rehabilitative efforts shown by exemplary conduct in prison warranted eleven level downward departure to 30 days); *U.S. v. Shy*, 538 F.3d 933 (8th Cir. 2008) (defendant's post-offense rehabilitation, including her contributions to society through her "extraordinary work with persons with disabilities" justified three years probation for possessing pseudoephedrine knowing it would be used to manufacture methamphetamines, despite guideline range of 37-46 months); *U.S. v. McFarlin*, 535 F.3d 808 (8th Cir. 2008) (three years probation imposed for conspiracy to distribute cocaine rather than 60 month guideline term, based on 54 year old defendant's extraordinary post-arrest rehabilitation, including his installation as a preacher, and serious health problems); *U.S. v. Newlon*, 212 F.3d 423 (8th Cir. 2000) (departure from 110 to 90 months for being felon in possession was not abuse of discretion where prior to arrest defendant had, at his own request, spent 85 hours in drug and alcohol program; his counselor attested to defendant's sincere desire for treatment, and defendant's family noted marked improvement in his behavior and attitude); *U.S. v. Jones*, 158 F.3d 492 (10th Cir. 1998) (upholding downward departure to probation for defendant in weapon possession case where court considered, among 11 factors, defendant's adherence to conditions of his release and changed both his attitude and conduct during release).

[5] *U.S. v. Howe*, 543 F.3d 128 (3d Cir. 2008) (affirming sentence of 2 years probation with 3 months home confinement for wire fraud despite a guideline range of 18-24 months. The district court did not clearly error in deeming the offense – characterized by the government as a two-year campaign to cover up a six-figure fraud on the Air Force – an "isolated mistake" in the context of Howe's entire life, which was otherwise upstanding and included devotion to family, community, and church); *U.S. v. Chase*, 560 F.3d 828 (8 Cir. 2009) (defendant's prior military service, advanced age, and other issues could support downward variance); *U.S. v. Baird*, 2008 WL 151258 (D. Neb. Jan. 11, 2008) (The District Court considered the defendant's 15 year military career, low risk of recidivism, lack of criminal history, and the conduct occurred several years ago as factors for a variance).

waited four years to bring an indictment against her. It has taken another three years to reach sentencing. The anguish of awaiting judgment has been a significant punishment in Ms. Marty's life, and which is likely the cause of many of her mental and emotional problems. During this period friends and family abandoned her and public shamed and berated her for actions. The public scorn has been demoralizing and has caused much suffering.

Through it all, Ms. Marty has chosen to face the music. She has not fled, and has made all of her required appearances. She has gone through rehab and made significant changes in her life. All the while she continues to agonize over the prospect that she will go to prison for a significant amount of time. She has suffered a lot already. Compounding the punishment with 10-15 years of prison is not only overkill, it is unnecessary in Ms. Marty's case.

She is a caring lady who enjoys farming and going to chicken shows. She spends a lot of time with her family and grandchild. She has a garden seed business that is really taking off. She plans to use that income to repay her debts. She lives with the guilt of her actions everyday. She knows what she did was wrong. Sending her to prison for ten years, however, is overkill in a situation like this. In this case, she submitted one tax return on her behalf, and the rest for other people, who she thought she was helping at the time. She was wrong, and many were hurt by her actions. She knows and regrets her actions. She asks the court to allow her to repay her debts to society and ways other than in a lengthy prison sentence.

**E. Response to Government's Sentencing Memo**

Ms. Marty admits that she prepared tax documents for many of people using a tax method that was wrong and inappropriate. But she did not go around advertising and promoting her method. By word of mouth, people showed up at her door or wrote to her from around the country asking for her services. When asked, she told them what she thought, that her tax methods were legitimate. She was wrong in her thinking and for telling people that her methods were legitimate. But she did it to help people in distress.

The government also argues that Ms. Marty billed for fees for her service "far in excess of what AFS charged for the preparation of clients' 'normal' tax return." (*See* pg. 3, line 16 of gov't. memo.) The government here makes assertions without providing any basis for its

claim. Ms. Marty understands in hindsight that her tax method was illegal and that she should never have prepared any tax documents using the method. At the time, however, she believed her method was proper. On that basis, she prepared tax documents using the method, and charged a fee appropriate for the complexity of her clients' case. Some cases were simple, some were more complex depending how much property one owed, whether they had investments, whether they were self-employed, and so forth. Charging various rates based on the complexity of a given case is standard and normal in the field.

The government also discusses the $9.5 million in losses to the government that resulted because of her conduct. Ms. Marty does not deny that her conduct resulted in millions of dollars in losses to the government, and knows she must pay the consequences of her actions. But it must be highlighted that only a fraction of that loss amount went to Ms. Marty's pocketbook. Ms. Marty used the tax method on her own taxes for only a single year's worth of taxes which netted her $388,735.08. When her business and property were raided by law enforcement, however, the government took back upwards of $300,000 or more. Additionally, while Ms. Marty did profit from the fees she charged her clients doing their taxes, her profit was in the thousands, not the millions of dollars. Ms. Marty does not object to how losses are calculated under the Guidelines, or that she is responsible for losses as determined by the Court. But it is important to note that of the $9.5 million in losses, most went to other people. And Ms. Marty did not ask others for a cut of the returns provided by the government. She charged a reasonable fee for her services, and the returns went to the individual.

The government at page 9, also claims that Ms. Marty advised her clients to continue the fraud even after her clients confronted her about letters they receiving from the IRS stating that their returns were fraudulent. But at page three, line 1 of the government's sentencing memo, the government admits that "Marty instructed clients to refile their returns." In fact, Ms. Marty did tell her clients that she would refile their returns without using the "tax method" free of charge. She gave her clients a choice. At that time in her life, it is important to remember that Ms. Marty still thought her methods were appropriate.

Finally, the government's request for 180 months is outrageous. Under *Booker* and *Fan Fan*, courts must consider what a reasonable sentence is in light of *3553 factors*.

**III. CONCLUSION**

For the foregoing reasons, Ms. Marty respectfully asks that the Court impose a sentence of not more than 36 months imprisonment.

Dated: April 19, 2017

Respectfully submitted,

/s/ Michael E. Hansen
MICHAEL E. HANSEN
Attorney for Defendant
TERESA MARTY