1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA,              No.  2:13-cr-00217-KJM

12                  Plaintiff/Respondent,

13          v.                              ORDER

14   TERESA MARTY, et al.,

15                  Defendant/Movant.

16

17

18          In April 2017, after she pled guilty to conspiring to defraud the government and

19   conspiring to file false claims against the government, the court sentenced Teresa Marty to 120

20   months in prison.  She now seeks to vacate, set aside, or correct her sentence under 28 U.S.C.

21   § 2255.  Mot., ECF No. 216.  The government opposes, arguing Marty waived her right to bring

22   this challenge and that the challenge nonetheless lacks merit.  Opp'n, ECF No. 222.  Marty filed a

23   reply.  ECF No. 225.  As explained below, the court DENIES Marty's motion.

24   I.     BACKGROUND

25          On August 31, 2016, Marty pled guilty subject to a written plea agreement.  *See*

26   Fed. R. Crim. P. 11; *see also* Plea H'rg Mins, ECF No. 139.  She faced fifty-three counts in all,

27   but pled guilty to only two counts: Conspiring to defraud the government (Count 1) and

28   conspiring to file false claims against the government (Count 46) in violation of 18 U.S.C. §§ 286

and 371, respectively. *See* Plea Agmt., ECF No. 141, § II.A; *see also* Second Superseding Indictment, ECF No. 97. In exchange for Marty's guilty plea and waiving her rights to appeal or collaterally attack her conviction or sentence, the government agreed to dismiss the remaining fifty-one counts. *See* Plea Agmt §§ III.A, VII.B. At Marty's plea hearing, and before accepting Marty's guilty plea, the court engaged Marty in a detailed colloquy to ensure she understood the terms of her agreement, including that she was waiving her right to bring a collateral attack. Tr., ECF No. 219, at 3-4, 7-8, 23. After this colloquy, the court accepted Marty's plea. *Id.* at 23. On April 26, 2017, the court sentenced Marty to 120 months custody on Count 1 and 60 months custody on Count 46, to be served concurrently for a total term of 120 months. Sentencing Mins., ECF No. 198; J. & Comm't, ECF No. 201.

On December 7, 2017, Marty filed this § 2255 motion, collaterally attacking her guilty plea and her sentence. She argues she was denied the opportunity to present favorable evidence. Pet. at 6-10 (arguing she was "unable to present testimony" about four types of evidence, including (1) calls she made to an IRS Hotline; (2) tax refunds her clients received; (3) frivolous IRS filing notices based on her co-defendant's tax return; and (4) the use of a collection agency and maritime lien). She also argues that because she suffered from chronic depression, anxiety and fear that diminished her mental capacity and interfered with her memory, she could not properly communicate with her attorney, Michael Hansen, and her attorney did not ask her for particular information that she now is able to identify. *Id.* at 11-12.

As explained below, Marty waived the right to bring this motion based on an inadequate opportunity to present evidence. To the extent Marty argues her inability to communicate with Mr. Hansen, including his not asking certain questions of her, amounts to ineffective assistance of counsel, she has not met the stringent burden to bring such a claim.

II. ANALYSIS

A. Waiver

Marty's plea agreement included an express waiver of her "right to appeal [her] guilty plea, conviction and the sentence imposed in this case." Plea Agmt. § VII.B. Such an

/////

agreement, if entered freely and voluntarily, is enforceable against all non-waivable rights. *United States v. Abarca*, 985 F.2d 1012, 1013-14 (9th Cir. 1993).

Here, the record shows Marty freely and voluntarily waived her right to collaterally attack her guilty plea, conviction or sentence. The court engaged Marty in an extensive colloquy at the plea hearing to verify that Marty was acting freely, competently, and voluntarily. *See generally* Tr. Marty was present with counsel throughout the hearing. *Id.* at 2. The court began by telling Marty, "If at any point you don't understand a question or for any reason whatsoever you wish to take a break to . . . consult with Mr. Hansen, really, for any reason whatsoever, please let me know, because it's essential that you understand everything that is happening here today." *Id.* at 3. The court confirmed with Marty that she had reviewed and fully understood her written plea agreement. *Id.* at 4. After the prosecutor summarized the plea agreement for the record, the court verified with Marty that this "was in fact the agreement Marty reached with the government." *Id.* at 11. Marty's signature on the plea agreement is consistent with her representation she understood and voluntarily agreed to its terms. *See* Plea Agmt § IX.B.

After satisfying itself that Marty was pleading guilty of her own volition and free of any external pressures, *id.*, the court explained in plain words that Marty also was giving up her right to collaterally attack her plea, conviction and sentence. *Id.* at 17 ("you are giving up rights you typically would have to file a motion following sentencing whereby you could seek to vacate the conviction or sentence or reduce the sentence."). When the court again stated, "you are saying you are giving up that right. Do you understand that?" Marty replied, "Yes." *Id.* The court then explained Marty's right to present her own testimony and evidence at a jury trial and explained Marty was giving up that right too, along with all of her rights attendant a jury trial. *Id.* at 18-19. Marty affirmed she understood and affirmed that she wanted to give up those rights. *Id.* at 19. Finally, after the entire colloquy, the court noted, "Having had this exchange with Ms. Marty, listened careful[ly] to her answers, observed her demeanor throughout, giving her a chance to consider what she is doing, I do find, first and for most [sic], that she is fully competent and capable of entering an informed plea . . . [and] that her plea is knowing and voluntarily." *Id.* at 23.

3

Marty has cited no part of the record that shows she waived her right to collaterally attack her guilty plea or sentence, either involuntarily or incompetently or both. At no point did she signal in any way that she wished to provide the court with more information. To the contrary, the record shows Marty repeatedly and unequivocally affirmed her understanding and willingness to enter the agreement and plead guilty. *See id.* at 11, 17-19. And as detailed below, nothing in the record suggests Marty's stress, anxiety or depression was so crippling that it affected the voluntariness of her plea. *See* Tr. at 8 (court noting it would pay close attention to ensure Marty was tracking the court's questions before accepting Marty's plea). To the contrary, when Marty mentioned her stress and associated medications the court immediately asked if anything about her condition or medication might affect her ability to properly follow the hearing: Marty responded "No. No." and assured the court should would "speak up" if she felt unable to follow anything that was happening. *Id.* at 5-6, 8. Thereafter, Marty never "spoke up" or showed any sign that she might be struggling with comprehending the proceeding. The court therefore concludes that she freely, voluntarily and competently waived her right to collaterally attack her conviction or sentence. Accordingly, to the extent her § 2255 motion is based on a lack of opportunity to present evidence, it is DENIED. *See* Pet. 6-10 (first four grounds).

### B. Ineffective Assistance of Counsel

Marty also argues that because she suffered from chronic depression, anxiety and fear, she could not properly communicate with her attorney. Pet. at 11-12. In her reply, Marty explains this "was not intended to be considered a ground for filing the Form 2255 motion but was merely me addressing the court with information regarding what life has been like." Reply at 3. In an abundance of caution, the court nonetheless construes Marty's argument as a potential ineffective assistance of counsel claim, which is a non-waivable claim and therefore falls outside the scope of Marty's waiver analyzed above. *See United States v. Pruitt*, 32 F.3d 431, 433 (9th Cir. 1994) ("We doubt that a plea agreement could waive a claim of ineffective assistance of counsel based on counsel's erroneously unprofessional inducement of the defendant to plead guilty or accept a particular plea bargain."); *United States v. Abarca*, 985 F.2d 1012, 1014 (9th

/////

4

Cir. 1993) (leaving open possibility of bringing ineffective assistance of counsel claim even where plea deal waived § 2255 rights).

To successfully set aside or vacate a conviction or sentence based on ineffective assistance of counsel, Marty must satisfy the stringent, two-pronged *Strickland* test by showing (1) objectively unreasonable performance by counsel and (2) resulting prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *see also Padilla v. Kentucky*, 559 U.S. 356, 357 (2010) (applying *Strickland* to § 2255 claims based on plea deal). *Strickland*'s first prong asks whether counsel's representation "fell below an objective standard of reasonableness," which is assessed using "prevailing norms of practice." *Padilla*, 559 U.S. at 366 (quoting *Strickland*, 466 U.S. at 688). *Strickland*'s second prong requires proof by "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 669; *see also United States v. Rodriguez-Vega*, 797 F.3d 781, 788 (9th Cir. 2015). The court may analyze these prongs in any order. *Pizzuto v. Arave*, 280 F.3d 949, 955 (9th Cir. 2002) (citing *Strickland*, 466 U.S. at 697). No matter the order, "[s]urmounting *Strickland*'s high bar is never an easy task," *Padilla*, 559 U.S. at 371 (citations omitted), and "[j]udicial scrutiny of counsel's performance must be highly deferential," *Strickland*, 466 U.S. at 689.

Here, Marty has not met *Strickland*'s demanding standard. She argues her chronic depression, anxiety and fear so crippled her mental capacity such that she could not properly communicate with her attorney. *See* Pet. at 11-12. Yet the record belies this conclusion. When Marty pled guilty, although she did not use the word depression, Marty clearly stated on the record in front of counsel that she was suffering from stress and anxiety for which she was taking medication. *See* Tr. at 4-6. The court questioned her carefully, verifying that Marty could fully understand everything that was happening in the courtroom. Tr. at 4-6. The court asked, "Is there anything, based on what you know, that would cause that medication to get in the way of your following along here today?" Tr. 4-6. Marty responded, "No." *Id.* at 6. The court asked again, "Nothing that prevents your understanding what is happening?" *Id.* Marty responded, "Correct." *Id.* The court verified this conclusion two more times with Marty and her attorney,

Mr. Hansen. *Id.* at 6-7. Before moving on, the court stated, "I'll stay alert to our exchange, and if I have questions about whether or not you are tracking what I'm saying, I will let you know." *Id.* at 8. This detailed colloquy, along with the rest of the proceeding, led the court ultimately to conclude Marty was fully competent to plead guilty and was doing so voluntarily after being fully informed. Tr. at 23.

Nothing in the record shows Marty was unable to communicate with Mr. Hansen, or that Mr. Hansen dealt with Marty's condition unreasonably. The court asked Marty, "are you fully satisfied with the advice, counsel, and representation that Mr. Hansen has given you in this case?" Tr. at 8. To which she replied, "Most definitely." *Id.* When Marty signed her plea agreement, she likewise affirmed that she was "satisfied with the representation of [her] attorney in this case." Plea Agmt. § IX.B. There is no evidence Mr. Hansen ignored or mishandled Marty's condition. In fact, Mr. Hansen pointed to Marty's condition to zealously advocate for a lower sentence. *See* Def.'s Sentencing Mem., ECF No. 194, at 2 (noting Marty "suffers from severe depression and anxiety and other medical issues"; explaining she "would not do well in prison, and does not pose a threat to repeat her offenses"; and asking the court to "Please consider leniency").

In sum, any claim of ineffective assistance of counsel based on an inability to communicate with Mr. Hansen is unavailing. *Strickland*'s standard for ineffective assistance of counsel and the standard for collaterally attacking a sentence are both "highly deferential"; when the two standards "apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). Marty has not surmounted this high bar.

Her motion is DENIED.

III.     CERTIFICATE OF APPEALABILITY

No certificate of appealability will issue. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court has instructed that a movant in Ms. Marty's shoes must show "reasonable jurists could debate whether . . . the petition should

6

have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Marty here has made neither showing. 28 U.S.C. § 2253(c)(2). No reasonable jurist would find this court's assessment of defendant's claims debatable or wrong.

IV.    <u>CONCLUSION</u>

Defendant's § 2255 motion is DENIED. No certificate of appealability will issue.

IT IS SO ORDERED.

This resolves ECF No. 216.

DATED:  May 22, 2018.

_____
UNITED STATES DISTRICT JUDGE