UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America, | No. 2:13-CR-0217 KJM |
| Plaintiff, | ORDER |
| v. | |
| Teresa Marie Marty, | |
| Defendant. | |

Defendant Teresa Marty moves to reduce her sentence under 18 U.S.C. § 3582, arguing the COVID-19 pandemic, her age and her health conditions are "extraordinary and compelling circumstances" under the term of that section. The government opposes. For the reasons below, Ms. Marty's motion is **granted.**

**I.     BACKGROUND**

Ms. Marty operated a tax return preparation business as an IRS enrolled agent. Presentence Investigation Report ("PSR") ¶ 7, ECF No. 152. In the summer of 2008, she and two co-conspirators prepared and filed 250 false tax returns with the IRS. *Id.* ¶¶ 6–7. She was later indicted on one count of conspiracy to file false claims against the United States in violation of 18 U.S.C. § 286 (count 1); thirty-four counts of filing false claims in violation of 18 U.S.C. § 287 (counts 2 through 35); seven counts of filing false liens in violation of 18 U.S.C. § 1521 (counts 36 through 42); one count of conspiracy to defraud the United States in violation of 18 U.S.C.

1

1  § 371 (count 46); and seven counts of unauthorized use of a Social Security number in violation

2  of 42 U.S.C. § 408(a)(8) (counts 47 through 53).  *See generally* Second Superseding Indictment,

3  ECF No. 97.  She pleaded guilty to counts 1 and 46 under the terms of a plea agreement.  Mins.

4  for Change of Plea Hr'g, ECF No. 139; Plea Agreement as to Teresa Marty, ECF No. 141.  The

5  undersigned sentenced her to concurrent terms of 120 months on count 1 and 60 months on count

6  46, to be followed by 24 months of supervised release.  Sentencing Mins., ECF No. 198; J. &

7  Commitment 2, ECF No. 201.  The court ordered restitution in the amount of  $9,500,492.83.

8  *Id.* at 6.

9     Ms. Marty, now in her 60s, Mot at 1, ECF No. 227, suffers from obesity and asthma.

10  Medical Records (filed under seal).[1]  She also has a history of smoking and alcoholism.  *Id.*;

11  PSR ¶¶ 3–4.  She is currently assigned to FCI Dublin.  Mot at 1.  Her projected release date is

12  December 10, 2025; thus to date Ms. Marty has served about 35 percent of her sentence.  Opp'n

13  at 10.  She has no record of discipline.  Mot at 2.  In August 2020, FCI Dublin recommended

14  moving Ms. Marty to home detention, but the Bureau of Prisons (BOP) has not followed the

15  recommendation.  Mot. at 4; Ex. C at 3, ECF No. 227-3.

16    Ms. Marty now moves for compassionate release, Mot., ECF No. 227; Reply,

17  ECF No. 236, seeking a reduction in her sentence to time served or home detention.  Mot at 2.  If

18  released, Ms. Marty plans to live with her ex-husband at their home in Pollock Pines, California.

19  *Id*.  The government opposes the motion, arguing her health conditions do not pose a sufficient

20  risk and the sentencing factors of § 3553(a) do not weigh in favor of a reduction.  Opp'n,

21  ECF No. 234.

22  /////

---

[1] The court **grants** Ms. Marty's and the government's requests to file portions of Ms. Marty health records under seal to protect her private medical information.  ECF Nos. 228, 229, 235; *see Chester v. King*, No. 1:16-cv-01257, 2019 WL 5420213, at *2, 2019 U.S. Dist. LEXIS 154413, at *5 (E.D. Cal. Sep. 10, 2019) ("This court, and others within the Ninth Circuit, have recognized that the need to protect medical privacy qualifies as a 'compelling reason' for sealing records.").

## II. LEGAL STANDARD

The district court that imposed sentence on a criminal defendant has authority to modify the term of imprisonment under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018.[2] Under the statute, a court may grant a defendant's motion to reduce her prison term, provided the defendant first satisfies an exhaustion requirement. 18 U.S.C. §§ 3582(c)(1)(A), 3582(c)(1)(A)(i). Generally, exhaustion requires defendants to seek compassionate release with the BOP and exhaust all appeals or show that at least 30 days have elapsed without a response from the BOP, whichever is earlier. *United States v. Bradley*, No. 14-00293, 2020 WL 3802794, at *3 (E.D. Cal. July 7, 2020). Once the defendant has exhausted administrative remedies, the analysis is twofold. First, the court must find "extraordinary and compelling reasons" to release a defendant from BOP custody. 18 U.S.C. § 3582(c)(1)(A). Second, the court must consider the same factors applicable at the original sentencing, enumerated in 18 U.S.C. § 3553(a), to the extent they remain applicable at the time the motion is brought. *Id*.

The statute further requires "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id*. § 3582(c)(1)(A). In 2006, the Sentencing Commission issued a policy statement addressing what qualifies as "extraordinary and compelling reasons" to release a defendant from BOP custody, which was last amended November 1, 2018. *See* U.S.S.G. § 1B1.13. Since the passage of the First Step Act, district courts have disagreed whether U.S.S.G. § 1B1.13 remains binding. This court, as it has in previous cases, considers the Sentencing Commission's policy statement as guidance, without determining whether it is binding in this context. The court notes as relevant here that, in addition to listing possible "extraordinary and compelling reasons," section 1B1.13 "imposes an additional consideration of whether the defendant is a danger to the safety of any other person or to the community." *United States v. Numann*, No. 16-00025, 2020 WL 1977117, at *2 (D. Alaska Apr. 24, 2020) (citing U.S.S.G. § 1B1.13(2)).

---

[2] Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

3

### III. ANALYSIS

Ms. Marty has exhausted her administrative remedies as required by § 3582(c). Opp'n at 10. The court thus turns to whether Ms. Marty's motion is supported by extraordinary and compelling reasons and the sentencing factors of § 3553(a).

#### A. "Extraordinary and Compelling" Reasons

Ms. Marty addresses some of the conditions at FCI Dublin, describing a lack of sanitation of commonly used communal items including the ice scoop and the hot water handle in the showers. Mot. at 11. She also cites concerns raised by fifty-nine agencies and organizations, who recently wrote to the Director of the Bureau of Prisons and to the FCI Dublin Warden about FCI Dublin's response to COVID-19. Mot. at 12; Ex. F, ECF No. 227-6. These entities voiced particular concerns about the facility's management of people in quarantine and the lack of testing for all incarcerated individuals and staff. *See id.* In the short time between the filing of Ms. Marty's motion and this order, FCI Dublin has also gone from reporting no active cases to now reporting sixty-two confirmed cases among incarcerated individuals and two cases of infected staff members. *Compare* Mot. at 12 *with* BOP, *COVID-19 Cases*.[3]

Some courts, including another judge in this district, have found that compassionate release is not warranted when a facility reports no active cases and the defendant does not show that conditions in the facility present a risk of a COVID-19 outbreak. *See, e.g.*, *United States v. Bolanos*, No. 1:13-CR-0362 AWI-1, 2020 WL 4748451, at *5 (E.D. Cal. Aug. 17, 2020) ("[T]here are no active cases of Covid 19 at FCI Dublin, either among the staff or the inmates."). However, other district courts have granted motions for compassionate release even when no active cases were reported at FCI Dublin at the time. *See United States v. Pezzi*, No. 15-00190, 2020 WL 6118789, at *2 (E.D. Cal. Oct. 16, 2020); *United States v. Villafuerte-Diaz*, No. 19-1063, 2020 WL 4336349, at *4 (S.D. Cal. July 28, 2020) ("[A]lthough FCI Dublin is currently reporting only one active inmate case, the BOP has only tested 93 inmates out of the 986 that are currently housed at FCI Dublin, and in several BOP institutions, the number of

---

[3] https://www.bop.gov/coronavirus/index.jsp (last visited Dec. 16, 2020)

positive cases jumped—ranging from 400 percent of the original number of cases to nearly 9,000 percent—within a span of two weeks."). Given the potential of COVID-19 to spread rapidly and Ms. Marty's description of conditions at FCI Dublin, along with the recent outbreak there, the high risk of infection in the Dublin facility weighs in favor of Ms. Marty's motion.

Ms. Marty argues the high risk of infection within FCI Dublin combined with her age, severe obesity, asthma and former tobacco and alcohol use place her at a high risk for serious COVID-19 complications and thus create "extraordinary and compelling" reasons to support her motion. Mot. at 8. The government opposes, arguing Ms. Marty's age, asthma and history of smoking and drinking do not pose a sufficient risk. Opp'n at 16. However, the government concedes Marty is "technical[ly] eligibl[e] under the [CDC] Guideline as a result of her obesity." *Id.* at 17 (citing CDC, *People with Certain Medical Conditions*[4]).

Many district courts, including the undersigned, have found that significant COVID-19 comorbidities weigh heavily in favor of a motion for compassionate release. *See, e.g.*, *Bradley*, 2020 WL 3802794, at *5 ("[D]efendant's combination of serious health conditions weighs heavily in favor of a sentence reduction."). Some courts have granted motions for compassionate release for defendants experiencing the same medical conditions as Ms. Marty, including asthma, obesity and a history of smoking. *See, e.g., United States v. Rodriguez*, No. 17-4477, 2020 WL 4592833, at *1 (S.D. Cal. Aug. 5, 2020) (granting motion for compassionate release for petitioner suffering from asthma and obesity); *United States v. Galaz*, No. 15-02559, 2020 WL 4569125, at *4 (S.D. Cal. Aug. 7, 2020) (collecting authority and research about risks of severe COVID-19 among those with history of smoking). Ms. Marty's BMI is also within the range that, alone, has justified release in some cases. *See* Opp'n Ex. 2 (Medical Records) at 20 (under seal); *see also, e.g., United States v. Richardson*, No. 17-00048, 2020 U.S. Dist. LEXIS 108043, at *8 (E.D. Cal. June 19, 2020) ("obesity alone" places a defendant "at higher risk of COVID-19 complications); *United States v. Levario*, No. 12-00399, 2020 U.S. Dist. LEXIS 105211, at *9 (E.D. Cal. June 15,

---

[4] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last accessed Dec. 11, 2020).

2020) (same).  The court finds Ms. Marty's health conditions and the risk of infection at FCI Dublin are extraordinary and compelling circumstances under § 3582.

### B.     Sentencing Guidelines

The Sentencing Guidelines instruct "the court should consider the sentencing factors set forth in 18 U.S.C. § 3553(a) when deciding a motion for compassionate release, and that the Court should not grant a sentence reduction if the defendant poses a risk of danger to the community, as defined in the Bail Reform Act." *Esparza*, 2020 WL 1536155, at *3 (citing U.S.S.G. § 1B1.13); *see also* 18 U.S.C. § 3582(c)(1)(A).  "In assessing danger, physical violence is not the only form of danger contemplated by the statute.  Danger to the community can be in the form of continued narcotics activity or even encompass pecuniary or economic harm." *United States v. Zaragoza*, No. 08-0083, 2008 WL 686825, at *3 (N.D. Cal. Mar. 11, 2008).

Here, Ms. Marty was convicted of a serious economic but nonviolent crime. She has no criminal history and has no record of misconduct while in custody, and she has recently shown remorse for her crime.  Mot. at 13.  Ms. Marty will not be employed as an IRS enrolled agent or prepare others' tax returns in the future.  These circumstances counterbalance her apparent lack of remorse at sentencing, which the government emphasizes, *see* Opp'n at 19.  Although a defendant's participation in an extensive fraud conspiracy can present a danger to the community and weigh against a motion for compassionate release, that is not always so; more recent events or a change in circumstances can show there is little or no risk of future harm, as is true here. *See United States v. Head*, No. 08-00093, 2020 WL 3180149, at *7 (E.D. Cal. June 15, 2020), *as amended* (July 1, 2020).

Although a 65 percent sentence reduction for an extensive tax fraud conspiracy is significant, "[c]ourts have been willing to grant release in spite of a short amount of time served where a defendant's health conditions rose to the level of an 'extraordinary and compelling' reason." *Galaz*, 2020 WL 4569125, at *6 (collecting authority and granting motion for compassionate release to inmate who had served only 14 months of her 48-month sentence); *see also, e.g., United States v. Fowler*, 445 F. Supp. 3d 452, 452 (N.D. Cal. 2020) (granting release for defendant who had served 11 months of 60 month sentence); *United States v. Castillo*,

6

1    No. 08-146, 2020 WL 2820401, at *5 (S.D. Tex. May 29, 2020) (granting release for defendant
2    who had served 12 years of life sentence).
3        FCI Dublin's recommendation that Ms. Marty be transferred to home confinement also
4    weighs in favor of her motion. The court has conferred with the Probation Office, which will be
5    supervising Ms. Marty if she is released. That office has confirmed Ms. Marty's release plan is
6    appropriate.
7        In sum, the sentencing factors weigh in favor of Ms. Marty's release on the whole.

8    **IV.    CONCLUSION**

9        Ms. Marty's motion for compassionate release is **granted**.
10       The court modifies Ms. Marty's previously imposed sentence of incarceration of 120
11   months to time served, with supervised release to follow for 24 months.
12       There being a verified residence and an appropriate release plan in place, this order is
13   stayed for up to seven days to make appropriate travel arrangements and to ensure defendant's
14   safe release. Ms. Marty shall be released as soon as appropriate travel arrangements are made,
15   and it is safe for her to travel. If more than seven days are needed to make appropriate travel
16   arrangements and ensure defendant's safe release, then the parties shall immediately notify the
17   court and show cause why the stay should be extended.
18       The court orders Ms. Marty to self-isolate for fourteen days in her home, as a means of
19   protecting her health and others while also complying with all applicable public health orders.
20       The requests to file under seal, ECF Nos. 228, 229 and 235, are **granted.**
21       This order resolves ECF Nos. 227, 228, 229 and 235.
22       IT IS SO ORDERED.
23   DATED: December 17, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE